662 F.2d 234
 John W. WHITE, Appellant,
and
Ronald M. Cash, Donahue Ellis, Willie A. Gibbons, Thomas J.
Hogge, Maurice W. Holloway, Wilson W. Jones, Percy C.
Overman, Hugh V. Reynolds, John Lee Roland, Thomas R.
Sawyer, Milton L. Stacey, Robert L. Van Dyke, Walter J.
White, James T. Long, Homer E. Watson, O. W. Patrick, James
T. Oman, Fred R. Walker, Roscoe C. McGuire, Elias James
Watkins, Plaintiffs,
v.
JOHNS-MANVILLE CORPORATION, and Johns-Manville Sales
Corporation, successor by merger with Johns-Manville
Products Corporation; Raybestos-Manhatten Corporation, a
Connecticut Corporation; Owens-Corning Fiberglas
Corporation, successor by purchase of Kaylo Division of
Owens-Illinois Glass Company; Pittsburgh Corning
Corporation, a Pennsylvania Corporation; The Celotex
Corporation, successor by merger with Panacon Corporation,
which was successor by merger of Briggs Manufacturing
Company and Philip Carey Corporation; Unarco Industries,
Inc., formerly known as Union Asbestos and Rubber Company;
H. K. Porter Company, Thermoid Division, a Delaware
Corporation; Southern Asbestos Company, a foreign
corporation; Eagle-Picher Industries, Inc., an Ohio
Corporation, Appellees,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and United
States of America, Third-Party Defendants.
John W. WHITE, Ronald M. Cash, Donahue Ellis, Thomas J.
Hogge, Maurice W. Holloway, Wilson W. Jones, Percy C.
Overman, John Lee Roland, Thomas R. Sawyer, Milton L.
Stacey, Robert L. Van Dyke, Walter J. White, James T. Long,
Homer E. Watson, O. W. Patrick, Roscoe C. McGuire, Elias
James Watkins, Plaintiffs,
and
Willie A. Gibbons, Hugh V. Reynolds, James T. Oman, Fred R.
Walker, Appellants,
v.
JOHNS-MANVILLE CORPORATION and Johns-Manville Sales
Corporation, successor by merger with Johns-Manville
Products Corporation; Raybestos-Manhatten, a Connecticut
Corporation; Owens-Corning Fiberglas Corporation, successor
by purchase of Kaylo Division of Owens-Illinois Glass
Company; Pittsburgh Corning Corporation, a Pennsylvania
Corporation; The Celotex Corporation, successor by merger
with Panacon Corporation, which was successor by merger of
Briggs Manufacturing Company and Philip Carey Corporation;
Unarco Industries, Inc., formerly known as Union Asbestos
and Rubber Company; H. K. Porter Company, Thermoid Division,
a Delaware Corporation; Southern Asbestos Company, a Foreign
Corporation; Eagle-Picher Industries, Inc., an Ohio
Corporation, Appellees,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and The United
States of America, Third-Party Defendants.
James T. OMAN, Fred R. Walker, John W. White, Willie A.
Gibbons, Hugh V. Reynolds, Appellants,
and
Ronald M. Cash, Donahue Ellis, Thomas J. Hogge, Maurice W.
Holloway, Wilson W. Jones, Percy C. Overman, John Lee
Roland, Thomas R. Sawyer, Milton L. Stacey, Robert L. Van
Dyke, Walter J. White, James T. Long, Homer E. Watson, O. W.
Patrick, Roscoe C. McGuire, Elias James Watkins, Plaintiffs,
v.
JOHNS-MANVILLE CORPORATION and Johns-Manville Sales
Corporation, successor by merger with Johns-Manville
Products Corporation; Raybestos-Manhatten Corporation, a
Connecticut Corporation; Owens-Corning Fiberglas
Corporation, successor by purchase of Kaylo Division of
Owens-Illinois Glass Company; Pittsburgh Corning
Corporation, a Pennsylvania Corporation; The Celotex
Corporation, successor by merger with Panacon Corporation,
which was successor by merger of Briggs Manufacturing
Company and Philip Carey Corporation; Unarco Industries,
Inc., formerly known as Union Asbestos and Rubber Company;
H. K. Porter Company, Thermoid Division, a Delaware
Corporation; Southern Asbestos Company, a Foreign
Corporation; Eagle-Picher Industries, Inc., an Ohio
Corporation, Appellees,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and The United
States of America, Third-Party Defendants.
James T. OMAN, Fred R. Walker, Willie A. Gibbons, Hugh V.
Reynolds, Appellees,
and
John W. White, Ronald M. Cash, Donahue Ellis, Thomas J.
Hogge, Maurice W. Holloway, Wilson W. Jones, Percy C.
Overman, John Lee Roland, Thomas R. Sawyer, Milton L.
Stacey, Robert L. Van Dyke, Walter J. White, James T. Long,
Homer E. Watson, O. W. Patrick, Roscoe C. McGuire, Elias
James Watkins, Plaintiffs,
v.
JOHNS-MANVILLE CORPORATION and Johns-Manville Sales
Corporation, successor by merger with
Johns-Manville Products Corporation, Appellant,
and
RAYBESTOS-MANHATTEN CORPORATION, a Connecticut Corporation;
Owens-Corning Fiberglas Corporation, successor by purchase
of Kaylo Division of Owens-Illinois Glass Company;
Pittsburgh Corning Corporation, a Pennsylvania Corporation;
The Celotex Corporation, successor by merger with Panacon
Corporation, which was successor by merger of Briggs
Manufacturing Company and Philip Carey Corporation; Unarco
Industries, Inc., formerly known as Union Asbestos and
Rubber Company; H. K. Porter Company, Thermoid Division, a
Delaware Corporation; Southern Asbestos Company, a Foreign
Corporation; Eagle-Picher Industries, Inc., an Ohio
Corporation, Defendants and Third-Party Plaintiffs,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and United
States of America, Third-Party Defendants.
James T. OMAN, Fred R. Walker, Willie A. Gibbons, Hugh V.
Reynolds, Appellees,
and
John W. White, Ronald M. Cash, Donahue Ellis, Thomas J.
Hogge, Maurice W. Holloway, Wilson W. Jones, Percy C.
Overman, John Lee Roland, Thomas R. Sawyer, Milton L.
Stacey, Robert L. Van Dyke, Walter J. White, James T. Long,
Homer E. Watson, O. W. Patrick, Roscoe C. McGuire, Elias
James Watkins, Plaintiffs,
v.
H. K. PORTER COMPANY, INC., THERMOID DIVISION, a Delaware
Corporation, Appellant,
and
JOHNS-MANVILLE CORPORATION and Johns-Manville Sales
Corporation, successor by merger with Johns-Manville
Products Corporation; Raybestos-Manhatten Corporation, a
Connecticut Corporation; Owens-Corning Fiberglas
Corporation, successor by purchase of Kaylo Division of
Owens-Illinois Glass Company; Pittsburgh Corning
Corporation, a Pennsylvania Corporation, The Celotex
Corporation, successor by merger with Panacon Corporation,
which was successor by merger of Briggs Manufacturing
Company and Philip Carey Corporation; Unarco Industries,
Inc., formerly known as Union Asbestos and Rubber Company;
Southern Asbestos Company, a Foreign Corporation;
Eagle-Picher Industries, Inc., an Ohio Corporation,
Defendants and Third-Party Plaintiffs,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and The United
States of America, Third-Party Defendants.
James T. OMAN, Fred R. Walker, Willie A. Gibbons, Hugh V.
Reynolds, Appellees,
and
John W. White, Ronald M. Cash, Donahue Ellis, Thomas J.
Hogge, Maurice W. Holloway, Wilson W. Jones, Percy C.
Overman, John Lee Roland, Thomas R. Sawyer, Milton L.
Stacey, Robert L. Van Dyke, Walter J. White, James T. Long,
Homer E. Watson, O. W. Patrick, Roscoe C. McGuire, Elias
James Watkins, Plaintiffs,
v.
OWENS-CORNING FIBERGLASS CORPORATION, successor by purchase
of Kaylo Division of Owens-Illinois Glass Company, Appellant,
and
JOHNS-MANVILLE CORPORATION and Johns-Manville Sales
Corporation, successor by merger with Johns-Manville
Products Corporation; Raybestos-Manhatten Corporation, a
Connecticut Corporation; Pittsburgh Corning Corporation, a
Pennsylvania Corporation; The Celotex Corporation, successor
by merger with Panacon Corporation, which was successor by
merger of Briggs Manufacturing Company and Philip Carey
Corporation; Unarco Industries, Inc., formerly known as
Union Asbestos and Rubber Company; Southern Asbestos
Company, a Foreign Corporation; Eagle-Picher Industries,
Inc., an Ohio Corporation, Defendants and Third-Party Plaintiffs,
v.
NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY and The United
States of America, Third-Party Defendants.
 Nos. 79-1854, 80-1028, 80-1140, 80-1154, 80-1227 and 80-1228.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 11, 1980.
Decided Oct. 5, 1981.
 
 Joel I. Klein, Washington, D. C. (H. Bartow Farr, III, Susan L. Carney, Rogovin, Stern & Huge, Washington, D. C., Robert R. Hatten, Patten & Wornom, Newport News, Va., Richard S. Glasser, Glasser & Glasser, Norfolk, Va., Gene Locks, Philadelphia, Pa., on brief), for appellants.
 Robert M. Hughes, III, Norfolk, Va. (C. Michael Montgomery, Glen A. Huff, Steven G. Schwartz, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for Johns-Manville Corp. and Johns-Manville Sales Corp.
 Archibald Wallace, III, Richmond, Va. (Albert D. Bugg, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., on brief), for H. K. Porter Co. and Southern Textile Corp.
 Jack E. Greer, J. Anderson Stalnaker, Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief for Owens-Corning Fiberglas Corp.
 
 
 1
 Allan S. Reynolds, Worth D. Banner, White, Reynolds, Smith & Winters, Norfolk, Va., on brief for Pittsburgh Corning Corp.
 
 
 2
 John Y. Pearson, Jr., Bruce T. Bishop, Guy R. Friddell, III, Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief for Celotex Corp.
 
 
 3
 William B. Eley, Kenneth A. Phillips, Eley, Rutherford & Leafe, Norfolk, Va., on brief for Eagle-Picher Industries, Inc.
 
 
 4
 Gerard E. W. Voyer, Taylor, Walker & Adams, Norfolk, Va., on brief for Unarco Industries, Inc.
 
 
 5
 William V. Hoyle, Charles A. Smith, Philip S. Payne, Hoyle Corbett, Hubbard, Smith & Payne, Newport News, Va., on brief for Raybestos-Manhatten, Inc.
 
 
 6
 Before WIDENER, HALL and PHILLIPS, Circuit Judges.
 
 K. K. HALL, Circuit Judge:
 
 7
 John W. White and four other shipyard workers of the Newport News Shipbuilding and Dry Dock Company appeal the judgments of the district court setting aside jury verdicts of $435,000 for each employee and granting judgment n.o.v. in favor of various manufacturers of asbestos products. Appellants raise these main issues on appeal: (1) whether the district court erred in denying admiralty jurisdiction; (2) whether the court properly applied Virginia law in determining when their causes of action accrued; (3) whether the court's rulings and instructions on damages were incorrect; and (4) whether the court properly set aside the jury verdicts.
 
 
 8
 We agree with the appellants that the court should have exercised its admiralty jurisdiction. Therefore, we vacate the judgments of the district court and remand for further proceedings.
 
 I. Background
 
 9
 John W. White, James T. Oman, Fred R. Walker, Hugh V. Reynolds, and Willie A. Gibbons were shipyard workers for Newport News Shipbuilding and Dry Dock Company (Newport News). In the course of their lengthy employments, they worked with asbestos insulation materials in the construction and repair of numerous ships and ocean-going vessels.[1] As a result of exposure to asbestos dust and fibers, these workers developed asbestosis, a severely debilitating lung disease usually characterized by shortness of breath, sharply recurring chest pains, and a deterioration and scarring of the lung tissue. There is no known cure for this condition, and the symptoms normally increase in their intensity and disabling effect.
 
 
 10
 Following extensive discovery efforts by counsel, the district court consolidated these cases and issued three separate, dispositive rulings. In the first of these orders, the court on March 30, 1978, declined to assert admiralty jurisdiction and rejected claims under the Extension of Admiralty Act, 46 U.S.C. § 740, or the general maritime law, 28 U.S.C. § 1333, because the alleged injuries bore no reasonable relationship to traditional maritime activity. Pursuant to its diversity jurisdiction, the court then held that the applicable Virginia two-year statute of limitations for personal injury[2] began to run as of the date of last exposure to asbestos, so that any claims over two years old were barred.
 
 
 11
 The second disputed order is that of December 10, 1979, in which the district court, referring to its March, 1978, ruling, limited any recoverable damages to only those "injuries which occurred during the period commencing at a date two years before the institution of each plaintiff's action and ending at the date of last exposure." The court also restricted the use of evidence of exposure prior to this period to prove only the identity of the manufacturers which furnished asbestos products used by the employees.
 
 
 12
 On the first day of trial on November 13, 1979, the court granted summary judgment in favor of the manufacturers against White since his claims were outside of the two-year limitation period. Thereafter, several summary judgment orders were entered in favor of some of the manufacturers as to certain plaintiffs. On December 14, 1979, the jury returned a verdict in favor of Oman, Walker, Reynolds, and Gibbons in the amount of $435,000 for each employee as follows:
 
 
 13
 Oman v. Johns-Manville and Owens-Corning;
 
 
 14
 Walker v. Johns-Manville, Owens-Corning, and Pittsburgh Corning;
 
 
 15
 Reynolds v. H. K. Porter Co., Inc.; and Gibbons v. Johns-Manville.
 
 
 16
 The third contested order is that of January 31, 1980, wherein the district court granted the manufacturers' motion for judgment n.o.v. and entered judgment in favor of the appellees. The court's rationale for this action was that the employees had failed to adequately prove the extent of any injuries during the two-year limitation period and that the jury verdicts were "shockingly excessive" in light of the actual evidence introduced at trial. After the employees' motions to reconsider were denied, this consolidated appeal was timely filed. The manufacturers have challenged certain evidentiary rulings made during trial in their cross-appeal.
 
 II. Admiralty Jurisdiction
 
 17
 The principal issue confronting us on appeal is whether the district court should have exercised its inherent admiralty jurisdiction in these products liability cases. All parties agree that the decision in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), sets forth the controlling criteria for determining whether a tort action is "maritime" and thus within the admiralty jurisdiction of the federal courts. The two-part test of Executive Jet requires (1) a maritime locality of the injury, and (2) a "significant relationship to traditional maritime activity" to the alleged wrong. Id. at 268, 93 S.Ct. at 504. Thus, a plaintiff must satisfy both the maritime locality and "nexus" requirements to invoke the admiralty jurisdiction of the district court.
 
 
 18
 While the exercise of admiralty jurisdiction must be confined to matters of maritime commerce and navigation, regardless of the maritime situs of the injury, there is growing authority and precedent among the federal courts that products liability actions are cognizable under admiralty law when the Executive Jet criteria are met. In Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co., 565 F.2d 1129 (9th Cir. 1977), the court, applying Executive Jet, held that a products liability claim for personal injury against the manufacturer of a marine diesel engine with a defective fuel filter was properly within admiralty jurisdiction. Accord, Jones v. Bender Welding & Machine Works, Inc., 581 F.2d 1331 (9th Cir. 1978); Jig the Third Corp. v. Puritan Marine Insurance Underwriters Corp., 519 F.2d 171 (5th Cir. 1975), cert. denied, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); 1 Benedict on Admiralty § 188 (7th ed. 1974).[3]
 
 
 19
 In the present case, the plaintiff employees alleged in their complaint that they had installed asbestos insulation materials during ship construction and repair in the course of their employment with Newport News. Their work was performed at both the shipyard and dry dock areas as well as aboard the vessels while they were located on navigable waters. Thus, the allegations would meet the locality test of Executive Jet.
 
 
 20
 We must next determine whether the factual circumstances surrounding the employees' injuries satisfy the maritime "nexus" requirement. In Executive Jet the Supreme Court simply held that an aircraft which fell into navigable waters did not have a sufficient relationship to maritime activity to trigger admiralty jurisdiction. The opinion of the Court gives no indication as to what actual activities would satisfy the maritime "nexus" test. Hence, we must examine the function of these shipyard workers in fathoming their relationship to maritime commerce and navigation.
 
 
 21
 As already stated, each of these employees spent a significant part of his working career in the fabrication and replacement of various types of asbestos insulation materials for use on public and private ships. Without such shipyard efforts, these vessels would have been unable to perform their maritime role as carriers of people and cargo. Thus, installation of insulation materials, which by their very nature become an appurtenance, or integral part, of the ship, is clearly essential to the maritime industry. Therefore, the work done by these shipyards bears a "significant relationship to traditional maritime activity" because the installation of the asbestos products has a direct effect on marine navigation and commerce.
 
 
 22
 We disagree with the manufacturers' contention that a finding of admiralty jurisdiction in these cases would extend such jurisdiction to include the production of any item which finds its way into a maritime environment. The manufacturers' argument that admiralty jurisdiction does not exist in products liability cases where the allegedly defective or hazardous product is not unique to maritime use is inapposite, since the evidence presented at trial clearly established that the materials used by these shipyard workers were designed, advertised, and marketed as maritime asbestos products. Hence, it was quite foreseeable by the manufacturers that these materials would be primarily sold and fabricated for use on ships. While at least one other federal appellate court has seemingly applied admiralty law to a products liability case where the defective component was not limited to maritime use, Sperry Rand Corp. v. Radio Corporation of America, 618 F.2d 319 (5th Cir. 1980), we today only hold that under the circumstances of these cases, when the materials used by these shipyard workers were designed, advertised and marketed as maritime asbestos products, the Executive Jet criteria have been met and admiralty jurisdiction should be exercised.[4]
 
 III. Accrual of Cause of Action
 
 23
 The district court, relying primarily on Street v. Consumer Mining Corp., 185 Va. 561, 39 S.E.2d 271 (1946), and its progeny,[5] ruled in its order of March 30, 1978, that each employee's cause of action accrued as of the date of last exposure to asbestos products. This interpretation of the Virginia statute of limitations has since been held by the Virginia Supreme Court to not apply to plaintiffs afflicted with mesothelioma.[6] Locke v. Johns-Manville Corp., 221 Va. 951, 275 S.E.2d 900 (1981). However, because this case falls within admiralty jurisdiction, the equitable doctrine of laches applies rather than the statute of limitations.
 
 
 24
 In admiralty suits involving personal injury, this Court has held that while federal courts may look to the parallel statute of limitations of the forum state for initial guidance, such statutes alone do not determine the existence of unreasonable delay. In this case, the insidious nature of the disease should also be given consideration. In addition, the defendant still bears the burden of proving inexcusable or inadequately excused delay plus prejudice since laches is an affirmative defense under Rule 8(c), Federal Rules of Civil Procedure. Giddens v. Isbrandtsen Co., 355 F.2d 125 (4th Cir. 1966). See also, Ashland Oil, Inc. v. Madison Coal & Supply Co., Inc., 461 F.Supp. 997 (S.D.W.Va.1978); White v. Lundeberg Maryland Seamanship School, Inc., 57 F.R.D. 128 (D.Md.1972). The procedure to be followed by the district court is definitively set forth in Giddens, supra, at 128.
 
 
 25
 We do not reach the merits of the issue of laches or how far back the applicable exposure period for each employee should be extended; these issues are remanded for consideration by the district court. Upon determining the relevant periods involved for each shipyard worker, the lower court must ascertain which manufacturers are proper party defendants for each plaintiff and then take steps to reinstate the relevant parties before the court.
 
 IV. Damages
 
 26
 In its order of December 10, 1979, the court applied the Virginia two-year statute for personal injury to determine each employee's relevant period for which damages might be recovered. This resulted in complete summary judgment against White and severely limited the potential recovery of the remaining plaintiffs. Moreover, in his jury charge on the issue of damages, the trial judge instructed the jurors that each plaintiff's recovery was only for "contracted asbestosis from exposure in a particular period of time to asbestos, which is in addition to that asbestosis which he already had previously contracted. The defendants are not liable for any asbestosis contracted prior to the periods involved or for any symptoms resulting from such asbestosis."
 
 
 27
 After the jury answered the special verdict forms in favor of each employee in the amount of $435,000, the court granted judgment n.o.v. because under Virginia law each plaintiff had not presented sufficient evidence "to prove with reasonable certainty the proportional amount of his damages attributable to each (contributing) cause." The court found this rule of state law to be "particularly significant in these cases where each of the plaintiffs entered the relevant time periods with pre-existing asbestos-related infirmities."
 
 
 28
 The instruction that the manufacturers were not legally accountable for any asbestosis incurred prior to the designated relevant periods of exposure for each employee is a correct statement of the law. However, it is also well-established tort law that a negligent defendant may be liable for any aggravation of a pre-existing condition. This includes a concealed physical condition, such as a latent disease, and this is so even though such defendant was in no way responsible for the pre-existing condition. Prosser, Law of Torts § 43 (4th ed. 1971). While the jury could not properly award damages against the manufacturers for prior exposure-related injuries, it could find from the medical evidence presented at trial that the plaintiffs were diseased by exposures to the asbestos products prior to the relevant periods and that such condition was so aggravated as to cause asbestosis or an exacerbation of asbestosis.
 
 V. Conclusion
 
 29
 Because we find that the exercise of admiralty jurisdiction is proper under the test established in Executive Jet, the application of Virginia's two-year limitation period to the employees' claims was error. Therefore, the judgments entered in these cases, or affected by our present disposition of this appeal, must be vacated and a new trial conducted under the admiralty jurisdiction of the federal court.[7]
 
 
 30
 VACATED AND REMANDED.
 
 WIDENER, Circuit Judge, concurring:
 
 31
 While I agree with the majority that admiralty jurisdiction attaches to the appellants' claims, I believe that certain aspects of that decision require more explanation.
 
 
 32
 The first involves the conclusion that the locality component of the test enunciated in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), has been met. We have recently held, in Holland v. Sea-Land Service, Inc., 655 F.2d 556 (4th Cir. 1981), that an action sounding in tort is "... only cognizable under traditional admiralty jurisdiction if (1) the wrong occurred on navigable waters and (2) bore a significant relationship to a maritime activity." Holland, supra, at 558. The district court made no finding as to the situs of the wrong in this case. In the present opinion, the court notes only that the situs requirement is satisfied by allegations in the complaint of injury both on navigable waters and on land.
 
 
 33
 I note that in their affidavits the plaintiffs claim that at least 90% and as much as 97% of their exposure to the manufacturers' products occurred on navigable waters. Given this overwhelming predominance of exposure arising in the proper maritime situs, and especially taking into account that no issue has been made of the extent of the exposure on navigable waters, I would agree that the entirety of the plaintiffs' tort claims are properly cognizable in admiralty. Our decision should not, however, be read to imply a similar rule in all cases in which there is exposure to injury both on land and on navigable waters.
 
 
 34
 I am troubled by the fact that the majority addresses its analysis solely to the question of admiralty jurisdiction over claims sounding in tort. The plaintiffs' complaints in this case generally assert claims based upon the manufacturers' failure to warn of the dangers of the asbestos-based products were fit for their intended use. While the court's analysis of admiralty jurisdiction over torts is clearly applicable to the former claims, its application to the latter is doubtful if applicable at all.
 
 
 35
 In its order of September 13, 1979, in the related case of Johns-Manville Corporation, et al. v. United States, No. 78-648-N (E.D.Va. December 21, 1979), the district court held that a claim of breach of an implied warranty sounded in contract rather than in tort. This aspect of the district court's order was not challenged by the parties on appeal, and, in fact, formed a basis of our opinion in that case, Glover v. Johns-Manville Corporation, et al., 662 F.2d 225, No. 80-1085 (4th Cir. 1981), as well as in White v. Johns-Manville, 662 F.2d 243 (4th Cir. 1981).
 
 
 36
 If we accept that characterization as correct, it is clear that the Executive Jet test defining the extent of admiralty jurisdiction over tort claims is inapplicable here. While similar to that test, the question of the existence of admiralty jurisdiction over a contractual claim is decided upon a determination of whether the contract is maritime in nature. See Kossick v. United Fruit Company, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); Sanderlin v. Old Dominion Stevedoring Corporation, 385 F.2d 79 (4th Cir. 1967); Ford Motor Company v. Wallenius Lines, M/V Atlantic Cinderella, 476 F.Supp. 1362 (E.D.Va.1979). Our opinion fails to apply this test to the plaintiffs' implied warranty claims.
 
 
 37
 There is, however, a great similarity between the significant relationship with maritime activity required under Executive Jet and the question of the existence of a maritime contract. In light of our finding that the tort claims in this case have a sufficient nexus with a maritime activity to support admiralty jurisdiction, I believe that the claims on implied warranties arising in the same factual setting must be considered to be maritime in nature. Therefore, I agree that the plaintiffs' claims, whether sounding in tort or in contract, are cognizable in admiralty.
 
 
 38
 I do not agree with the majority opinion as it describes the plaintiffs' claims as cognizable in a court of admiralty pursuant to its "inherent jurisdiction." P. 239. I do not believe that inferior federal courts have any inherent jurisdiction. Our determination of jurisdiction in footnote 4 as under 28 U.S.C. § 1333, I believe to be sufficient.
 
 
 
 [1]
 White alleged that his last exposure to these asbestos products was in November, 1974, which was more than two years before his suit was initiated. The other shipyard workers claimed that they were continually exposed to asbestos materials until a time within the two-year period preceding the dates on which their respective complaints were filed
 
 
 [2]
 The district court held that the applicable statute of limitations for personal injury was set forth in Va.Code § 8.01-243 (1977 Replacement Volume)
 
 
 [3]
 Admiralty jurisdiction of products liability actions was also recognized in the pre-Executive Jet decision in Schaeffer v. Michigan-Ohio Navigation Co., 416 F.2d 217 (6th Cir. 1969)
 
 
 [4]
 Since we find that jurisdiction is present under 28 U.S.C. § 1333, we need not address whether jurisdiction also exists under the Extension of Admiralty Act, 46 U.S.C. § 740
 
 
 [5]
 E. g., Richmond Development & Housing Authority v. Laburnum Construction Corp., 195 Va. 827, 80 S.E.2d 574 (1954); Hawks v. DeHart, 206 Va. 810, 146 S.E.2d 187 (1966); and Comptroller of Virginia ex rel. Virginia Military Institute v. King, 217 Va. 751, 232 S.E.2d 895 (Va.1977)
 
 
 [6]
 In Locke, the court found that a cause of action for mesothelioma purportedly arising from asbestos exposure accrues on the date the cancerous tumor forms rather than on the date of last exposure. 958-959, 275 S.E.2d 900
 
 
 [7]
 Those remaining issues raised on appeal regarding the effect of the two-year limitation period on the burden of proof relating to injuries and damages, as well as the challenges to evidentiary rulings raised on cross-appeal, have become moot and are not addressed in light of our disposition of the primary issues of this consolidated appeal