**Ruth Ida ZELASKOWSKI,
etc., Plaintiffs,**

v.

**JOHNS–MANVILLE, CORP., et al.**

**Civ. A. No. 82–2069.**

United States District Court,
D. New Jersey.

Jan. 16, 1983.

Jesse Moskowitz, Jersey City, N.J., for plaintiff.

Harwood, Lloyd, Ryan, Coyle, Wulster & Griggs, Hackensack, N.J., for defendant Owens Corning.

McCarter & English, Newark, N.J., for defendant Owens Illinois.

Wolff & Samson, West Orange, N.J., for defendant Turner & Newall.

Hoagland, Longo, Oropollo & Moran, New Brunswick, N.J., for defendant Glen Aldon.

Horuvitz, Perlow & Morris, Bridgeton, N.J., for defendant Wicolet Ind.

Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, Roseland, N.J., for defendant Keene Corp.

Lamb, Hutchinson, Chappell, Ryan & Hartung, Jersey City, N.J., for defendant Philip Carey.

Haskins, Robottom, Hack, Prio & O'Day, West Orange, N.J., for defendant Combustion Engineer.

DeSevo, Cerutti & Lombardi, Jersey City, N.J., for defendant Penn Valley.

Connell, Foley & Geiser, Newark, N.J., for defendant H.K. Porter.

Parker, McCay & Criscuolo, Mount Holly, N.J., for defendant Forty Eight Insul.

Joseph L. Garrubbo, Westfield, N.J., for defendant Garlock.

Enright, Porter & Lenney, Bloomfield, N.J., for defendant Pacor.

Steedle, Megargee, Youngblood, Franklin & Corcoran, Pleasantville, N.J., for defendant Armstrong Cork.

Morgan, Melhuish, Monaghan & Spielvogel, Livingston, N.J., for defendant Raymark Ind.

Graham & Winter, Edison, N.J., for defendant Fibreboard.

Sellar, Richardson & Stuart, Newark, N.J., for defendant John Crane.

Carton, Nary, Witt, Asbury Park, N.J., for defendant Flintkote Co.

Philip Lago, Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, Newark, N.J., for defendant GAF.

## OPINION

HAROLD A. ACKERMAN, District Judge.

In this personal injury action, plaintiff seeks to impose liability on numerous manufacturers and distributors of asbestos for injuries sustained by her decedent as a result of his exposure to asbestos during the course of his employment as a marine machinist at the New York and Philadelphia Naval Shipyards. Plaintiff asserts both diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff initially failed to specifically invoke the court's admiralty jurisdiction under 28 U.S.C. § 1333 and to allege defendants' citizenship as required to demonstrate the existence of diversity jurisdiction. Plaintiff has moved to amend her complaint to correct these deficiencies. Plaintiff additionally seeks a determination that admiralty jurisdiction is properly invoked or alternatively to delete non-diverse defendants in order to preserve and perfect diversity jurisdiction.

This motion was first heard by Magistrate Cowen and a Report and Recommendation issued on April 15, 1983, recommending dismissal of plaintiff's complaint for lack of subject matter jurisdiction as to all defendants except the Johns-Manville (JM) defendants. The Magistrate declined to recommend dismissal as to the JM defendants, concluding that the automatic stay resulting from JM's bankruptcy proceeding prevented him from exercising jurisdiction over them.

Plaintiff has filed objections to the Magistrate's report which are opposed by GAF and numerous other defendants.

This matter is presently before me to review the Magistrate's recommendation of April 15, 1983. Pursuant to 28 U.S.C. § 636(b)(1), I must make a *de novo* determination with respect to those portions of the Magistrate's report to which objections have been made.

■ Defendant points out that plaintiff's objections to the Magistrate's report were not filed within the ten day time period required by 28 U.S.C. § 636(b)(1). However, counsel for plaintiff advised the court that he was ill and I consented to an extension of time for filing objections. As defendant concedes, such late filing is permissible if the moving party adequately justifies his request for relaxation of the time constraints. Moreover, as stated by Judge Troutman in *Consorcio Construction Impregilo v. Mack Trucks,* 497 F.Supp. 591, 593 (E.D.Pa.1980), "the court has the power, if not the duty, to review magistrate's rulings independently and carefully, irrespective of timely objections raised by the parties." *See also, Webb v. Califano,* 468 F.Supp. 825, 828 (E.D.Cal.1979). Accordingly, I will exercise my authority to make a *de novo* determination in this matter.

While I agree with the Magistrate's conclusion that plaintiff's claims are not cognizable under this court's admiralty jurisdiction, I disagree with his determination that this court lacks subject matter jurisdiction and I decline to follow his recommendation of dismissal. Rather, I have concluded that plaintiff should be permitted to amend her complaint to properly invoke diversity jurisdiction.

I turn first to that part of plaintiff's motion which requests this court to exercise its inherent admiralty jurisdiction in this action.

■ In *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court established a two prong test for determining whether a tortious act is subject to the admiralty jurisdiction of the federal courts. That test requires first that the alleged tort occur on navigable waters and second that "the wrong bear a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504. While initially limited to aviation torts, the holding of *Executive Jet* has been construed as apply-

ing to determinations of federal admiralty jurisdiction outside of that context. *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), (applying admiralty jurisdiction to collision between two pleasure boats on navigable waters).

Plaintiff alleges that her husband worked on ships in drydock, at piers and occasionally at sea. Defendants do not dispute that these allegations satisfy the locality prong of the *Executive Jet* test. Thus I turn to the second prong of the test which requires me to determine whether the alleged tort arose in the course of traditional maritime activity.

In *Edynak v. Atlantic Shipping Inc. Cie. Chambon*, 562 F.2d 215 (3d Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), the Third Circuit set out four factors to be considered in determining the existence of maritime activity: 1) the functions and roles of the parties, 2) the types of vehicles and instrumentalities involved, 3) the causation and the type of injury, and 4) the traditional concepts of the role of admiralty law.

Applying these same four factors to substantially identical claims against manufacturers of asbestos products, the Ninth Circuit concluded that admiralty jurisdiction was not properly invoked. *Owens-Illinois, Inc. v. United States District Court*, 698 F.2d 967 (9th Cir.1983). My examination of the *Edynak* factors in the instant case leads me to the same conclusion.

Plaintiff's decedent's work as a marine machinist entailed repairing and installing boilers, engines, valves, pumps and refrigeration equipment. Plaintiff argues that the first factor set out in *Edynak* is satisfied because the repair work performed by her decedent is essential to the maritime function of ships. Plaintiff relies on *White v. Johns-Manville Corp.*, 662 F.2d 234, 239 (4th Cir.1981), *cert. denied* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), in which the Court determined, analyzing similar facts, that the "installation of insulation materials, which by their very nature become an appurtenance, or integral part,

of the ship, is clearly essential to the maritime industry," and therefore bears a significant relationship to traditional maritime activity.

Defendant contends that Mr. Zelaskowski's duties were not maritime in character. Defendant relies primarily on *Owens* in which the court concluded that plaintiff's job lacked sufficient "maritime flavor" to invoke the admiralty jurisdiction of the federal courts: "Plaintiff's job, installing and cleaning up around the installation of asbestos, is hardly a distinctively maritime role, in contrast to the navigational functions of the crew of a ship engaged in ocean or river shipping." 698 F.2d at 970–71. *See also, Austin v. Unarco Industries*, 705 F.2d 1, 12–13 (1st Cir.1983), (holding admiralty jurisdiction not proper over similar claims against manufacturers of asbestos). While the *Owens* Court agreed with the Fourth Circuit that asbestos installation is essential to the maritime industry, it nevertheless declined to adopt the *White* court's conclusion that plaintiff's work had a significant nexus to traditional maritime activities. I agree with the Ninth Circuit's conclusion and do not find the nature of plaintiff's decedent's work sufficiently maritime in character to establish admiralty jurisdiction.

Plaintiff argues that the second factor of the *Edynak* test is satisfied simply because her decedent worked on ships. Defendant maintains that this fact alone is insufficient to give the decedent's job the requisite maritime flavor as only the vehicle and not the instrumentalities involved are maritime. Again defendant places reliance on *Owens* which states: "While ships were obviously involved here, the tools and safety equipment (or lack thereof) present in the installation and clean-up of asbestos—unlike the navigational equipment and safety devices of a vessel—possess few maritime attributes." 698 F.2d at 971. *See also, Keene Corp. v. U.S.*, 700 F.2d 836, 844 (2d Cir. 1983), (holding admiralty jurisdiction not proper over indemnity suit by asbestos manufacturer against the United States government). The logic of the *Owens* deci-

sion is persuasive. The mere fact that plaintiff's decedent worked on a ship is not sufficient to invoke admiralty jurisdiction.

I turn now to the third factor set out in *Edynak,* a consideration of the causation and type of injury alleged. Plaintiff claims that Mr. Zelaskowski died as a result of exposure to asbestos products used to insulate ships. Plaintiff maintains that such insulation is essential to a ship's performance of its maritime role and therefore plaintiff's claims bear an important relationship to maritime activity. Defendant disagrees citing the findings made by *Owens* in this connection:

> The nature of the injury, an asbestos-related disease, and its causation, the unprotected inhalation of asbestos fibers, bear little maritime connection. Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with negligence taking place in commerce and navigation on the navigable waters.

698 F.2d at 971. I agree and I find that the nature of the injury alleged here is not maritime in essence.

Finally, I turn to examine the relationship of plaintiff's claims to traditional admiralty law concepts. While plaintiff submits that admiralty law's concern for the safety of shipyard workers is sufficient to establish admiralty jurisdiction in the instant case, defendant submits that plaintiff's claims are not traditionally associated with the role of admiralty law.

In this regard, *Owens* focused on the historic distinction between contracts for ship repairs which have traditionally been considered maritime and contracts for new ship construction which have been considered non-maritime. *See The Francis McDonald,* 254 U.S. 242, 244–45, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920), *North Pacific Steamship Co. v. Hall Brothers Co.,* 249 U.S. 119, 128, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919).

Accordingly, that Court determined that plaintiff's work involving solely new ship construction was a non-maritime activity.

Conversely, the Ninth Circuit recently held admiralty jurisdiction applicable to claims of a marine pipefitter involving ship repair and renovation. *Myrhan v. J.M. Corp.,* No. C 81–540 T (W.D.Wash.1982), *summary reversal denied* No. 82–3360 et al. (9th Cir.1983).

Application of that analysis to the instant case, in which plaintiff's claims involve ship repair, would dictate a conclusion that admiralty jurisdiction is proper. However, I do not find that distinction determinative here. While the *Owens* court endorsed this traditional allocation of admiralty jurisdiction over ship-related contracts as a factor to be considered, it nonetheless indicated its reluctance to apply admiralty jurisdiction in cases such as this, expressly rejecting the *White* court's conclusion that claims involving both ship repairs and construction were significantly related to traditional maritime concern. Moreover, plaintiff concedes that this approach is untenable, relying on *Weinstein v. Eastern Airlines, Inc.,* 316 F.2d 758, 766 (3d Cir. 1963), which determined that the test for establishing admiralty jurisdiction over contract disputes is different from that applicable to tort claims.

The *Austin* court similarly rejected this distinction and determined that injuries to shipyard workers are not a traditional concern of admiralty law stating:

> [I]f the reason for admiralty's special concern for the care and safety of seamen is that they are exposed to the peculiar hazards of the sea and a vessel's equipment, then the dangers faced by a shipyard worker installing asbestos insulation are scarcely traditional concerns of admiralty or is there any reason to expect an admiralty court to possess expertise in addressing those dangers.

705 F.2d at 13.

The traditional concerns of admiralty were explained at length by the Court in *Executive Jet:*

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to

ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

409 U.S. at 270, 93 S.Ct. at 505. Plaintiff does not demonstrate that her claims are encompassed by these concerns.

More recently in *Foremost*, the Court stated that "the need for uniform rules governing navigation is a primary consideration in determining the scope of admiralty jurisdiction." 457 U.S. at 677, 102 S.Ct. at 2660. Plaintiff similarly fails to show that the application of admiralty law to this action will advance this purpose. Furthermore, as aptly stated by the *Owens* Court, "[n]o need exists for the special expertise of a court in admiralty about navigation or water-based commerce nor is there any federal interest in uniformity of decision requiring the application of federal substantive law" in this action. 698 F.2d at 971.

■ After balancing the factors involved here, I conclude that plaintiff's claims do not bear a significant relationship to maritime activity and therefore are not cognizable in admiralty jurisdiction. While I agree with the *Austin* court's suggestion that distinguishing between maritime and non-maritime activities "approaches medieval nicety," nevertheless my conclusion is dictated by an analysis of the factors set out in *Edynak*. Plaintiff's decedent generally worked at drydock and only rarely at sea, his work was not the type of work traditionally done by a ship's crew and the haz-

ards plaintiff's decedent was exposed to are not unique to maritime activities.

Plaintiff's reliance on *White* which found admiralty jurisdiction applicable to similar facts is misplaced. That court rested its decision on the fact that "the materials used by these shipyard workers were designed, advertised and marketed as maritime asbestos products..." 662 F.2d at 240. That is not the test adopted in this Circuit. Moreover, as previously noted the three circuit courts that have subsequently considered these issues have expressly declined to follow the rationale of *White* for reasons which I find persuasive. *Austin*, 705 F.2d at 9, *Owens*, 698 F.2d at 971, *Keene*, 700 F.2d at 844–45.

Finally, the parties disagree about whether the *Austin* court was correct in determining that the application of admiralty jurisdiction depends on whether shipyard workers are "entitled to the special admiralty-confined warranty of seaworthiness." 705 F.2d at 11. Plaintiff submits that the warranty of seaworthiness is irrelevant to the question of whether admiralty jurisdiction exists. Defendant GAF, on the other hand, advocates the use of this concept to decide the question. Whether the factors considered in the context of the warranty of seaworthiness were properly established by the First Circuit as the test for admiralty jurisdiction has no bearing here. I have concluded, under the test utilized by this circuit, that admiralty jurisdiction does not apply in the instant case. Moreover, I note that the *Austin* court reached the same result applying the warranty of seaworthiness to facts virtually identical to those presented here.

As I have concluded that admiralty jurisdiction is not established here, I must now address plaintiff's request to amend her complaint to delete non-diverse defendants and to properly plead the citizenship of corporate defendants in order to preserve and perfect diversity jurisdiction.

Plaintiff is a citizen of New York State. She concedes that Keene Corporation and the JM defendants are also New York State citizens and accordingly moves to de-

lete them from her complaint. Defendant GAF adds that its principal place of business is in New York and thus claims that it, too, is a non-diverse defendant.

■ It is well-established that a federal court may "drop non-diverse parties whose presence is not essential to the suit in order to preserve and perfect its diversity jurisdiction..." *Field v. Volkswagenwerk AG,* 626 F.2d 293, 296 (3d Cir.1980). Plaintiff has sued defendants as joint tortfeasors. As I pointed out in *Barry v. Johns-Manville Corp.,* Civil Action Nos. 77–1223 *et seq.* (September 23, 1982), joint tortfeasors are not considered indispensable parties under federal law. *See also, Field,* 626 F.2d at 298. As GAF concedes, there is no question as to plaintiff's right to delete Keene Corporation. If, in fact, GAF is also a non-diverse defendant, this conclusion is equally applicable to them.

■ Defendant argues, however, that JM cannot be dismissed from this action due to the automatic stay resulting from its bankruptcy proceeding. Defendant has not cited any authority for this contention. I fail to see the logic of its position. Dismissal of plaintiff's claims against JM will not contravene the purpose of the stay provision. *See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

■ Defendant also suggests that plaintiff cannot drop her claims against JM because crossclaims between JM and its codefendants would then be dismissed. Yet, plaintiff clearly has a right to drop claims against a joint tortfeasor whose crossclaims then become unnecessary. If the remaining defendants choose to press their claims, they are entitled to seek contribution from JM. *See, Rivera v. Gerner,* 89 N.J. 526, 535, 446 A.2d 508 (1982). *See also,* N.J.S.A. 2A:15–5.3.

■ Plaintiff has submitted an amended complaint. As defendant correctly points out, however, plaintiff has not alleged the principal place of business of the corporate defendants as required by 28 U.S.C.

§ 1332. *See, e.g., Carolina Casualty Insurance Co. v. Insurance Co. of North America,* 595 F.2d 128, 130 n. 1 (3d Cir. 1979). I do not find this failure to be fatal. Defective allegations may be freely amended pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1653. Accordingly, I will grant plaintiff ten days to file an amended complaint properly establishing diversity jurisdiction. Plaintiff must delete defendants Keene Corporation and JM and must ascertain GAF's principal place of business and similarly delete GAF if non-diverse.