**Clarence FRANCOIS, Plaintiff,**

**v.**

**RAYBESTOS–MANHATTAN, INC., et al., Defendants.**

**No. C–83–2737 RFP.**

United States District Court,
N.D. California.

Dec. 1, 1983.

---

Martin N. Glickfeld, Cartwright, Sucherman, Slobodin & Fowler, Inc., San Francisco, Cal., for plaintiff Clarence Francois.

Dennis K. Ames, Christopher Cannon, La Follette, Johnson, Schroeter & DeHaas, San Francisco, Cal., for defendant The Flintkote Co.

Richard B. Evans, Gudmundson, Siggins & Stone, San Francisco, Cal., for defendant Armstrong World Industries, Inc.

John J. Murray, Jerome P. Harrison, Law Offices of John J. Murray, Redwood City, Cal., for defendant U.S. Gypsum Co.

Elizabeth Williams, Winingham, Roberts, Rogie & Fama, San Francisco, Cal., for defendant Eagle-Picher Industries, Inc.

Brian W. Aherne, Dennis K. Ames, La Follette, Johnson, Schroeter & DeHaas, Los Angeles, Cal., for defendant Standard Insulations, Inc.

Mark L. Shea, Popelka, Allard, McCowan & Jones, San Jose, Cal., for defendant Owens-Corning Fiberglas Corp.

Anthony Griffin, St. Clair, Zappettini, McFetridge & Griffin, San Francisco, Cal., for defendant Nicolet, Inc.

Mark T. Pallis, Berry & Berry, Oakland, Cal., for defendant Celotex Corp.

Richard S. Bishop, Bishop, Barry, Howe & Reid, San Francisco, Cal., for defendant PPG Industries, Inc.

Mark L. Cederborg, Mullally & Cederborg, Oakland, Cal., for defendants Keene Corp. and Keene Bldg. Products Corp.

James N. Penrod, Delbert C. Gee, Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for defendant Pittsburgh Corning Corp.

John F. Van de Poel, Edward M. Price, Van De Poel, Strickland & Haapala, Oakland, Cal., for defendant ACands, Inc.

William A. Levin, Law Offices of Ronald E. Hothem, San Francisco, Cal., for defendant Fibreboard Corp.

Charles Negley, Douglas Wah, Maloney, Chase, Fisher & Hurst, San Francisco, Cal., for defendant Raybestos-Manhattan, Inc.

## MEMORANDUM OF DECISION

PECKHAM, Chief Judge.

### SUMMARY

The defendants in this asbestos action have filed three motions to dismiss: (1) a motion to dismiss for lack of subject matter jurisdiction; (2) a motion to dismiss for failure to state a claim; and (3) a motion to dismiss for lack of personal jurisdiction. The first two motions (lack of subject matter jurisdiction and failure to state a claim) have been made by various defendants,[1] while the motion to dismiss for lack of personal jurisdiction has been raised by a single defendant.[2]

The plaintiff in this action originally worked at Mare Island Naval Shipyard. While working at Mare Island, he alleges that he was exposed to the asbestos that is causing his current health problems. It is this exposure that gives rise to his cause of action.

The court finds that the subject matter jurisdiction issue is dispositive and therefore there is no need to resolve the other two issues.

### LACK OF SUBJECT MATTER JURISDICTION

The plaintiff originally filed this action under the admiralty jurisdiction of the court as set out in 28 U.S.C. § 1333.[3] The

---

1. The following defendants have joined in the first two motions: Armstrong World Industries, Inc.; U.S. Gypsum Co.; The Flintkote Co.; Fibreboard Corp.; Keene Corp.; Keene Building Products Corp.; Owens-Corning Fiberglas Corp.; Nicolet, Inc.; Celotex Corp.; PPG Industries; ACands, Inc.; Standard Insulations, Inc.; Eagle-Pitcher Industries, Inc.

2. The Standard Asbestos Mfg. & Insulating Co.

3. The text of 28 U.S.C. § 1333 reads as follows:
   The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
   (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

defendants move to dismiss the entire complaint, contending that this personal injury action does not have a significant relationship to a traditional maritime activity and therefore is not maintainable as an admiralty claim. As admiralty is the only basis for federal jurisdiction alleged by the plaintiff, this action must be dismissed if admiralty jurisdiction does not obtain.

The plaintiff alleges that admiralty jurisdiction is proper because "... at the relevant times herein mentioned, he worked in the repair of completed vessels involved in the service of water-based commerce and that his handling of and/or exposure to asbestos products referred to herein arose during such activity." Complaint at 2. Thus, the plaintiff contends that his participation in the repair of maritime vessels brings his claim within the ambit of admiralty jurisdiction.

In analyzing this contention, this court must begin with the controlling Supreme Court directives. Historically, admiralty jurisdiction has been extended to all torts occurring on the high seas or navigable waters. *See, e.g., The Plymouth,* 3 Wall 20, 36, 18 L.Ed. 125 (1866) ("[e]very species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.")

In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court articulated a new standard for defining the scope of admiralty jurisdiction and rejected the traditional test based on "locality." The historical locality test would have conferred admiralty jurisdiction on the *Executive Jet* cause of action, which involved an airplane crash into the navigable waters of Lake Erie. But in *Executive Jet* the Supreme Court concluded that this accident did not have a sufficient relationship to traditional maritime activity and that admiralty jurisdiction should not apply. *Executive Jet*

supplemented the simple locality test with an additional requirement:

> we conclude that the mere fact that the alleged wrong "occurs" or is located on or over navigable waters ... is not of itself sufficient .... It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity.

*Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. at 268, 93 S.Ct. at 504.

Subsequent to its decision in *Executive Jet,* the Supreme Court has emphasized that this "significant relationship to traditional maritime activity" test applies to all cases where admiralty jurisdiction is sought. In *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), the Court noted that "the *Executive Jet* requirement that the wrong have a significant connection with traditional maritime activity is not limited to the aviation context." The clear implication of *Foremost Insurance* is that *any* party asserting admiralty jurisdiction must be prepared to demonstrate a significant connection with a traditional maritime activity.

In wrestling with this issue of when admiralty jurisdiction obtains, the Ninth Circuit recently addressed a situation very similar to the instant action. *See Owens-Illinois, Inc. v. United States District Court,* 698 F.2d 967 (9th Cir.1983). In *Owens-Illinois,* the court held that admiralty jurisdiction did not lie in a personal injury action brought by a plaintiff who alleged exposure to asbestos during the *construction* of new maritime vessels. The court stated:

> we conclude that the torts alleged here, arising solely in the process of new ship construction, lack the "maritime flavor" necessary to invoke the jurisdiction of the federal courts under 28 U.S.C. § 1333(1).

*Owens-Illinois,* 698 F.2d at 970. *See also Hollister v. Luke Construction Co.,* 517

---

(2) Any prize brought into the United States and all proceedings for the condemnation of

property taken as prize.

F.2d 920, 921 (5th Cir.1975) ("it is also true that since a contract for the building of a ship is non-maritime in character, a tort arising out of work on a launched but incomplete vessel also lacks maritime flavor.")

It is important to note that in *Owens-Illinois* the Ninth Circuit did not confront the precise issue presently before this court: does admiralty jurisdiction lie in a personal injury action when the tort allegedly occurred during *repair* of an already completed vessel? Although the question now before this court is a question of first impression in this circuit, the Ninth Circuit has given some suggestion as to how it might ultimately resolve this issue. In reaching its decision in *Owens-Illinois*, the court looked to the overall nature of the claim and stated:

> Nor does an examination of the other factors persuade us of a significant maritime quality to the claims asserted here. Plaintiff's job, installing and cleaning up around the installation of asbestos, is hardly a distinctively maritime role, in contrast to the navigational functions of the crew of a ship engaged in ocean or river shipping. While ships were obviously involved here, the tools and safety equipment (or lack thereof) present in the installation and clean-up of asbestos—unlike the navigational equipment and safety devices of a vessel—possess few maritime attributes. The use of masks, unlike the provision of lifeboats, is hardly a precautionary measure distinctively connected to traditional maritime activity. Finally, the nature of the injury, an asbestos-related disease, and its causation, the unprotected inhalation of asbestos fibers, bear little maritime connection. Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with negligence taking place in commerce and navigation on the navigable waters.

*Id.* at 970–71.

This statement suggests the approach that the Ninth Circuit considers to be proper under *Executive Jet*. Although this willingness to look at the totality of the situation was made in the context of an injury alleged during the construction of maritime vessels, it could just as easily apply to the facts alleged by the plaintiff in the instant action involving repair.

Nevertheless, the plaintiff attempts to argue that *Owens-Illinois* established a meaningful distinction between injuries occurring during construction and repair. Conceding that the Ninth Circuit has excluded construction-related injuries from admiralty jurisdiction, the plaintiff goes on to argue that "in matters of contract, admiralty jurisdiction *will lie* when the contract relates to repair or navigation ...." Plaintiff's Memorandum of Points and Authorities at 2 (emphasis in original). In support of this argument, the plaintiff can only point to language—best described as dicta—in *Owens Illinois* that states "Where a contract relates to the repair or navigation of a vessel, a dispute arising from the contract lies within admiralty jurisdiction." 698 F.2d at 970.

The plaintiff's attempt to rely upon this statement falls short and it should not be used to resolve the issue currently before this court. First, the statement relied upon by plaintiff does not—on its face—control the instant situation. That statement refers to disputes arising out of contract. The matter before this court sounds in tort. Second, the statement that plaintiff points to is supported only by cases that pre-date *Executive Jet;* it is not at all clear that it accurately states viable law. Third, and most importantly, the arbitrary distinction that the plaintiff seeks to draw between construction and repair is flatly contradicted by the remainder of the *Owens-Illinois* opinion itself, where the court stressed the need for examining the totality of the plaintiff's situation. 698 F.2d at 970–71. In essence, this argument by the plaintiff seeks to take dicta from the *Owens-Illinois* opinion and use it to turn the logic of the opinion inside out.

The flaw in the plaintiff's argument is made even clearer by examining what the Ninth Circuit chose not to do in *Owens-Illinois*. In reaching its decision, the Ninth Circuit explicitly refused to follow a previous decision of the Fourth Circuit granting admiralty jurisdiction in a ship construction case after finding that the asbestos containing products involved had a maritime purpose. *See White v. Johns-Manville Corp.*, 662 F.2d 234 (4th Cir.1981). The *White* court held that "when the materials used by these shipyard workers were designed, advertised, and marketed as maritime asbestos products, the *Executive Jet* criteria have been met and admiralty jurisdiction should be exercised." *Id.* at 240.

The *Owens-Illinois* court refused to apply the *White* rationale to the case before it, noting that there was no showing that the asbestos products involved in *Owens-Illinois* had been designed, advertised or marketed as maritime products. But even after noting this factual distinction, the Ninth Circuit noted its discomfort with using *White* as a guidepost when it stated that "we have difficulty with the [*White*] court's reasoning." *Owens-Illinois*, 698 F.2d at 971. Significantly, the plaintiff in the instant action has failed to allege that the relevant products were 'designed, advertised, and marketed as maritime asbestos products.' Thus, even if the Ninth Circuit followed *White*—which it does not—the plaintiff's argument would fail.

The intimation contained within *Owens-Illinois* that admiralty jurisdiction is not available when the only maritime connection occurred during the drydock repair of ships is a conclusion already reached by the First Circuit. In a long and carefully reasoned opinion, *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.), cert. dismissed — U.S. —, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983), the First Circuit concluded that admiralty jurisdiction is not available to a personal injury plaintiff who alleged exposure to asbestos during *either* the construction or repair of maritime vessels. The *Austin* court concurred with the defendants in rejecting the claim of jurisdiction:

[The defendant] argues, however, that the decedent's work was not significantly related to traditional maritime activity involving navigation and commerce, as required by the Court in *Executive Jet;* that injuries to shipyard workers are not a traditional concern of admiralty law; and that the policy justifications for a uniform maritime law do not support admiralty jurisdiction in this case. After much reflection, we agree.

*Id.* at 11.

The *Austin* court predicated its decision on what it saw as the underlying purpose of admiralty jurisdiction:

The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters.... It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

*Id.* (*quoting from Executive Jet*, 409 U.S. at 270, 93 S.Ct. at 505.)

In refusing to extend the scope of admiralty jurisdiction, *Austin* established a test that is worthwhile and instructive: the only personal injuries that fall within admiralty jurisdiction are those that occur to seamen and others doing seamen's work. Those performing non-traditional maritime services, even if performed in a shipyard, cannot avail themselves of admiralty jurisdiction. *Austin*, 705 F.2d at 10. In applying this test to asbestos workers who apparently performed tasks very similar to those performed by the plaintiff in the instant action, the *Austin* court concluded:

Under the tests set out above, the plaintiff's decedent would plainly be excluded. The ships on which he worked were out of navigation and the work was major, requiring special equipment and skills. It was not work traditionally done by

members of the crew. More important, if the reason for admiralty's special concern for the care and safety of seamen is that they are exposed to the peculiar hazards of the sea and a vessel's equipment, then the dangers faced by a shipyard worker installing asbestos insulation are scarcely traditional concerns of admiralty or is there any reason to expect an admiralty court to possess expertise in addressing those dangers.

*Id.* at 12.

The *Austin* court's refusal to extend admiralty jurisdiction in this setting also accords with federalism concerns. The risks encountered by the plaintiff engaged in repair of ships differ little, if at all, from the risks encountered by dry land construction workers installing or repairing similar asbestos products. These similarly situated dry land workers cannot avail themselves of federal jurisdiction; they must press their claims in state court. It is thus difficult to fashion a rationale for permitting the instant plaintiff to pursue his action in federal court when similarly situated plaintiffs who worked on dry land are barred from this court. As the Supreme Court has expressed increasing reluctance in recent years about widening the scope of admiralty jurisdiction, *see Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971), this court must be sensitive to going beyond the permissible scope of admiralty.

Thus, the court concludes that the defendants' motion to dismiss for lack of subject matter jurisdiction should be granted. Although the Ninth Circuit has not yet spoken definitively on this issue, the more well reasoned trend of the case law avoids extending admiralty jurisdiction unless there is a significant relationship to traditional maritime activity.

In this case, it was irrelevant that the alleged tort occurred aboard ship; no facts have been alleged that demonstrate why there is a significant connection to a traditional maritime activity. Applying the test laid out by the Supreme Court in *Executive Jet* and the First Circuit in *Austin,* the defendant's motion for dismissal for lack of subject matter jurisdiction will be granted.

Accordingly, there is no need to address either of the remaining two motions.

SO ORDERED.