OWENS–ILLINOIS, INC. a/k/a Owens-Illinois Glass Co., Petitioner,

v.

The UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF WASHINGTON, AT TACOMA, Respondent,

and

Wayne Plunkett, Real Party in Interest,

Fibreboard Corp., et al., Other Parties.

No. 83–7012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1983.

Decided Jan. 25, 1983.

No appearance for the parties.

Before WRIGHT, FLETCHER and FARRIS, Circuit Judges.

PER CURIAM.

Petitioner Owens-Illinois, in an action brought on the alternative theories of admiralty and diversity jurisdiction, seeks a writ of mandamus to compel the district court to vacate its order striking defendants' jury demand and setting the matter for trial to the court as an admiralty claim. We hold that under the facts of this case, admiralty jurisdiction is lacking and that, even assuming that certain aspects of plaintiff's case are within admiralty jurisdiction, defend-

ants' constitutional right to a jury trial must be honored. The writ will issue.

Wayne Plunkett filed suit in 1981, seeking recovery for personal injuries allegedly caused by exposure to asbestos products manufactured by defendants. He alleged admiralty jurisdiction under 28 U.S.C. § 1333(1) (1976) on the basis of his substantial exposure to asbestos products while employed at shipyards during World War II. He alleged diversity of citizenship of the parties as an independent basis of federal jurisdiction under 28 U.S.C. § 1332 (1976).

Defendants questioned plaintiff's allegations of admiralty jurisdiction and moved to dismiss the claims in admiralty. The district court denied these motions and, two weeks before the scheduled trial date, struck defendants' jury demand and ruled that the action would be tried to the court in admiralty. Defendants filed an emergency petition for writ of mandamus. We stayed the trial and entertained the petition on an expedited basis.

■ Where the constitutional right to a jury trial is drawn in question, mandamus is an appropriate remedy. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Myers v. United States District Court,* 620 F.2d 741, 744 (9th Cir. 1980). If defendants are entitled to a jury trial, then their right to the writ is clear. *See Bauman v. United States District Court,* 557 F.2d 650, 654–55 (9th Cir.1977); *In re Cement Antitrust Litigation (MDL No. 296),* 688 F.2d 1297, 1301 (9th Cir.1982).

Defendants' claim that their jury demand was improperly stricken poses two separate but related questions. First, is plaintiff's action within the admiralty jurisdiction of the district court? If not, then no legal basis exists for restricting defendants' right to a jury trial because the action would be based solely on diversity jurisdiction and the jury demand was timely. Second, if any part of plaintiff's action is properly within admiralty jurisdiction, may the ac-

tion or any part of it be tried to the court rather than a jury?

The existence of admiralty jurisdiction in this case turns on the nature of plaintiff's alleged exposure to asbestos products. The only exposure that plaintiff claims to have a maritime connection occurred during his wartime employment at two California shipyards. Plaintiff alleges that he worked with and around asbestos products in the boiler rooms of ships under construction, after the ships were launched but before they were completed. He also alleges exposure to asbestos products at oil refineries, scrapyards, and the like but does not claim that these activities have any maritime connection.[1]

■ This action cannot be founded solely on admiralty jurisdiction. Plaintiff's land-based exposure to asbestos fails to satisfy even the traditional test for admiralty jurisdiction: that a suit in tort is cognizable in admiralty only if the tort occurred on or over navigable waters. *The Plymouth,* 70 U.S. (3 Wall.) 20, 33–36, 18 L.Ed. 125 (1866). Plaintiff's claims of exposure aboard ships floating on navigable waters do satisfy this traditional location test:

> [T]he general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in the process of construction when lying on navigable waters within a State
> . . . .

*Grant Smith-Porter Ship Co. v. Rohde,* 257 U.S. 469, 477–78, 42 S.Ct. 157, 159, 66 L.Ed. 321 (1922); *see Hoof v. Pacific American Fisheries,* 279 F. 367, 371–72 (9th Cir.1922).

■ The maritime location of the tortious act or omission, however, no longer suffices to invoke admiralty jurisdiction. In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), the Supreme Court grafted a maritime relationship requirement onto the traditional test. In ad-

---

1. At oral argument and in his pleadings, plaintiff asserted that the shipyard exposure was the most significant because of the long latency period for his form of cancer. This causation question must be determined at trial. We cannot disregard any of the allegations in the complaint when examining defendants' right to a jury trial.

dition to having a maritime location, the tort must also arise in the course of a traditional maritime activity before admiralty jurisdiction will lie. *See Foremost Insurance Co. v. Richardson,* —— U.S. ——, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Prior decisions basing admiralty jurisdiction solely on the location of the tort therefore do not resolve the jurisdictional question in this case.

■ To determine whether an alleged tort bears a significant relationship to traditional maritime activity, we must consider four factors: (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered. *T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855, 857 (9th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975).

■ In examining the first factor, we find helpful the reasoning in the many cases that deal with whether a particular contract dispute is in admiralty or at law. The court's determination of whether admiralty jurisdiction exists depends on a qualitative assessment of the "maritime" nature of the contract at issue. *North Pacific Steamship Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919) (admiralty jurisdiction in matters of contract "depends upon the subject-matter ... the true criterion being the nature of the contract, as to whether it have reference to maritime service or maritime transactions").

■ Where a contract relates to the repair or navigation of a vessel, a dispute arising from the contract lies within admiralty jurisdiction. *E.g., Hall Brothers,* 249 U.S. at 128, 39 S.Ct. at 223–24 (repair of vessel whether afloat, in dry dock, or hauled up on land); *Ex parte McNiel,* 80 U.S. (13 Wall.) 236, 242–43, 20 L.Ed. 624 (1871) (pilotage of vessel). On the other hand, where the contract concerns the construction of or supplying of materials for the construction of a vessel, admiralty jurisdiction does not

lie. *E.g., People's Ferry Co. v. Beers,* 61 U.S. (20 How.) 393, 401, 15 L.Ed. 961 (1858) (construction of vessel); *Roach v. Chapman,* 63 U.S. (22 How.) 129, 132, 16 L.Ed. 291 (1860) (furnishing of boilers and engines for construction of new vessel); *The Francis McDonald,* 254 U.S. 242, 244–45, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920) (furnishing of labor and materials to launched but incomplete vessel). Premised on the fundamental notion that admiralty law—and hence the jurisdiction of the federal courts—should extend only to matters relating to navigation and shipping, this jurisdictional distinction was aptly explained by Justice McReynolds in *The Francis McDonald:*

> Notwithstanding possible and once not inappropriate criticism, the doctrine is now firmly established that contracts to construct entirely new ships are non-maritime because not nearly enough related to any rights and duties pertaining to commerce and navigation. It is said that in no proper sense can they be regarded as directly and immediately connected with navigation or commerce by water.

254 U.S. 242, 244, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920).

■ Satisfied that the traditional allocation of admiralty jurisdiction over ship-related contracts reflects a careful consideration of the proper role of admiralty law, we conclude that the torts alleged here, arising solely in the process of new ship construction, lack the "maritime flavor" necessary to invoke the jurisdiction of the federal courts under 28 U.S.C. § 1333(1). *See Hollister v. Luke Construction Co.,* 517 F.2d 920, 921 (5th Cir.1975) (injury to welder on barge that was still under construction was not within admiralty jurisdiction, since "tort arising out of work on a launched but incompleted vessel" lacks "maritime flavor").

Nor does an examination of the other factors persuade us of a significant maritime quality to the claims asserted here. Plaintiff's job, installing and cleaning up around the installation of asbestos, is hardly a distinctively maritime role, in contrast to the navigational functions of the crew of a

ship engaged in ocean or river shipping. While ships were obviously involved here, the tools and safety equipment (or lack thereof) present in the installation and clean-up of asbestos—unlike the navigational equipment and safety devices of a vessel—possess few maritime attributes. The use of masks, unlike the provision of lifeboats, is hardly a precautionary measure distinctively connected to traditional maritime activity. Finally, the nature of the injury, an asbestos-related disease, and its causation, the unprotected inhalation of asbestos fibers, bear little maritime connection. Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with negligence taking place in commerce and navigation on the navigable waters. *See Jones v. Bender Welding & Machine Works, Inc.,* 581 F.2d 1331, 1337 (9th Cir.1978) (admiralty jurisdiction lies over products liability claim based on defective engine which failed on high seas, where engine installed in repair of vessel); *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.,* 565 F.2d 1129, 1133 (9th Cir.1977) (by implication) (same). We conclude that plaintiff's claims do not bear a significant relationship to traditional maritime activity and that admiralty jurisdiction is therefore lacking.

In so holding we decline to follow the holding of the Fourth Circuit, which recently determined that admiralty jurisdiction existed in an action substantially similar to the one underlying this mandamus proceeding. *White v. Johns-Manville Corp.,* 662 F.2d 234, 240 (4th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). We note, however, that the plaintiff in that case alleged exposure to asbestos during repair of completed vessels as well as during new construction. 662 F.2d at 239. Given that the *repair* of a vessel involved in service in water-based commerce has traditionally been recognized as a maritime activity, *Hall Brothers,* 249 U.S. at 128, 39 S.Ct. at 223–24, *White* is perhaps distinguishable. This distinction notwithstanding, we have difficulty with the court's reasoning.

The court's statement in *White* that asbestos installation during ship construction was "clearly essential" to the maritime industry, 662 F.2d at 239, is undoubtedly correct. The conclusion that the work and torts arising therefrom had a significant relationship to traditional maritime activity is not compelled, however. In our view, torts occurring during the construction of new vessels are no more related to traditional maritime activity than are disputes arising out of contracts for ship construction, or, for that matter, the construction of a railroad line or the insulation of a power plant. No need exists for the special expertise of a court in admiralty about navigation or water-based commerce nor is there any federal interest in uniformity of decision requiring the application of federal substantive law. To the extent that we must choose between the Fourth Circuit's reasoning in *White* and the Fifth Circuit's in *Hollister,* we deem the latter more consistent with *Executive Jet.*

As admiralty jurisdiction is lacking here, there is no basis for denying defendants a jury trial. Even were we to find some basis for the assertion of admiralty jurisdiction, however, we would still be compelled to issue the writ.

■ The record is clear that certain of the asbestos exposures allegedly responsible for plaintiff's injuries could not be brought before the district court in admiralty. Diversity of citizenship is the sole basis for federal jurisdiction over these claims. The right to a jury trial in these circumstances is constitutional in origin and, where common issues of fact are involved, may not be denied by trying the admiralty claims first to the court. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 951–52, 3 L.Ed.2d 988 (1959); *DePinto v. Provident Security Life Insurance Co.,* 323 F.2d 826, 835–36 (9th Cir.1963), *cert. denied sub nom. Gorsuch v. DePinto,* 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).

■ Although no right to a jury trial exists in admiralty cases, *Waring v. Clarke*, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847), there is also no absolute ban on trial in such a manner, *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963); *Peace v. Fidalgo Island Packing Co.*, 419 F.2d 371 (9th Cir.1969).

■ When admiralty claims are joined with civil claims and the issues cannot be segregated for separate trial, a jury trial if timely demanded is required. *See Drakatos v. R.B. Denison, Inc.*, 493 F.Supp. 942, 947–48 (D.Conn.1980) (jury trial may be demanded in action alleging both common law negligence and maritime claims where both arose from same circumstances); *cf. Fitzgerald*, 374 U.S. at 20–21, 83 S.Ct. at 1650–51 (jury trial required in action alleging Jones Act and maritime claims where all arose from nonsegregable set of facts).[2] In light of the breadth of plaintiff's allegations and the underlying factual question as to the cause of his injuries, segregation appears impossible.

The petition for writ of mandamus is GRANTED, and the writ shall issue directing that this action be tried to a jury.

**2.** We do not limit the power of the district judge to provide for bifurcated trial of separate claims that are not part of "what is essentially one lawsuit to settle one claim" in other cases where segregation is possible. *See Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co.*, 90 F.R.D. 313, 318 (E.D.N.Y.1981) (distinguishing *Fitzgerald* as requiring jury trial for common factual issues *only* where both maritime and non-maritime claims are part of same basic cause of action).

Even if plaintiff's admiralty and diversity claims were segregable, however, plaintiff's right to a bench trial on the admiralty claim is doubtful, because he did not clearly invoke admiralty procedures in his complaint. Where plaintiff alleges both admiralty and diversity as bases for federal jurisdiction, pursuant to Fed. R.Civ.P. 9(h) he has the right to elect to have his admiralty claim adjudicated under admiralty procedures, including a bench trial, by identifying his claim as lying in admiralty. As long as no conflict exists with a defendant's constitutional right to trial by jury, this election if properly made cannot be defeated by defendant's jury trial demand. *See Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 986–97 (5th Cir.1978). Neither the language of the rule nor the comments of the Advisory Committee make clear whether a simple allegation of admiralty jurisdiction suffices to invoke the distinctive procedures of admiralty or whether an additional statement identifying the claim as an admiralty claim and specifically invoking Rule 9(h) is required. The latter interpretation seems correct, *see Smith v. Pinell*, 597 F.2d 994, 996 n. 2 (5th Cir.1979); *Banks v. Hanover Steamship Corp.*, 43 F.R.D. 374, 377, 382 (D.Md.1967), but we need not reach this question in light of our disposition.